UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DALE ALLEN BETLEM, SR.,

              Petitioner,

v.

RANDEE REWERTS,

              Respondent.

_____/

Case No. 1:18-cv-388

Honorable Janet T. Neff

## **REPORT & RECOMMENDATION**

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Dale Allen Betlem, Sr. is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.  On October 9, 2014, a Chippewa County Circuit Court jury found Petitioner guilty of one count of third-degree criminal sexual conduct (CSC 3), Mich. Comp. Laws § 750.520d(1)(a).   On November 12, 2014, the court sentenced Petitioner to a prison term of 12 to 20 years.[1]

       On April 4, 2018, Petitioner filed his habeas corpus petition.   Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).   Petitioner placed his petition in the prison mailing system on April 4, 2018.  (Pet., ECF No. 1, PageID.17.)

       The petition raises eight grounds for relief, as follows:

    I.     THE TRIAL COURT ABUSED [I]TS DISCRETION WHEN IT DENIED [PETITIONER'S] MOTION TO DISMISS FOR FAILURE TO BRING

---

[1] Petitioner's trial in the instant case followed his trial and conviction on four counts of first-degree criminal sexual conduct (CSC I), Mich. Comp. Laws § 750.520b(1)(a) (victim under 13), involving his daughter.  *See People v. Betlem*, No. 320690, 2015 WL 4772172 (Mich. Ct. App. Aug. 13, 2015).  Petitioner's sentence in the instant case runs concurrently with his 30-60-year sentences in the CSC-I case.

THE INCARCERATED [PETITIONER] TO TRIAL WITHIN 180 DAYS AND ALSO DENIED HIM HIS CONSTITUTIONAL RIGHT TO A SP[]EEDY TRIAL.

II.    [PETITIONER] WAS DENIED DUE PROCESS WHERE THE STATE HAD NO JURISDICTION TO ISSUE ARREST WARRANT WHERE THE 10 YEAR STATUTE OF LIMITATIONS HAD EXPIRED.

III.    [PETITIONER] WAS DENIED DUE PROCESS WHERE THERE WAS NO PROBABLE CAUSE TO ARREST WITHOUT SEARCH WARRANT FOR THE PREGNANCY OF TRISHA BETLEM.

IV.    [PETITIONER'S] CONVICTION AND SENTENCE SHOULD BE VACATED BECAUSE THE PROSECUTION VIOLATED HIS CONSTITUTIONAL RIGHT TO SPEEDY TRIAL.

V.    TRIAL COUNSEL WAS INEFFECTIVE THROUGHOUT TRIAL WHICH DEPRIVED [PETITIONER] OF A DEFENSE IN VIOLATION OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO COUNSEL AND TO PRESENT A COMPLETE AND EFFECTIVE DEFENSE.

VI.    [PETITIONER] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS, WHERE COUNSEL'S FAILURE TO TIMELY FILE MOTIONS TO SUPPRESS THE DNA EVIDENCE THAT HAD BEEN DESTROYED.

VII.    [PETITIONER] WAS DEPRIVED OF A FAIR TRIAL WHERE THE PROSECUTION DID NOT FILE THE WITNESS OR EXHIBIT LIST IN A TIMELY MANNER DEPRIVING THE DEFENSE [THE OPPORTUNITY] TO EFFECTIVELY PREPARE TO CROSS EXAMINE THE STATE WITNESS.

VIII.    THE TRIAL JUDGE VIOLATED [PETITIONER'S] DUE PROCESS RIGHT TO A FAIR TRIAL WHEN IT ENGAGED IN BIASED OPINIONS THAT EXPRESSED THE JUDGE'S BELIEF IN THE PROSECUTION'S CASE AND DISBELIEF IN [PETITIONER'S] CASE REQUIRING REVERSAL.

(Attach. C to Pet., ECF No. 1-1, PageID.21-22, 26, 28-29, 31, 33, 35, 37.)  Respondent has filed

an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are

noncognizable, procedurally defaulted, or without merit.  Upon review and applying the standards

of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214

(AEDPA), I agree that the grounds are noncognizable, procedurally defaulted, and/or without merit.  Accordingly, I recommend that the petition be denied.

## Discussion

I.    Factual allegations

Petitioner's case was heard by a jury in a one-day trial held on October 9, 2014.[2] The following factual summary is taken from the opinion issued by the Michigan Court of Appeals, which Petitioner does not dispute:

> Officers arrested Betlem on June 26, 2013, and the prosecutor charged him with one count of CSC III for engaging in sexual penetration with TB. The prosecutor alleged that the offense occurred between January 1, 2003, and September 15, 2005. The evidence at trial showed that Betlem had a sexual relationship with TB beginning when she was 13 years old. TB subsequently married Betlem, but divorced him in 2013 and cooperated with the police department's investigation. Testimony demonstrated that Betlem impregnated TB in 2005, when she was still 15 years of age. A DNA test confirmed the child's paternity and Betlem admitted that he was the child's father in an interview.
>
> The prosecutor also charged Betlem in a separate case for sexual crimes committed against his daughter. That case went to trial first and TB testified against Betlem. The court in that case convicted Betlem of four counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a), and providing obscene material to a minor, MCL 722.675. The trial court sentenced him to serve concurrent prison terms of 30 to 60 years each for his CSC I convictions.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.78-79; ECF No. 9-7, PageID.690-91.)  Additional facts, as necessary, will be provided during discussion of the various habeas grounds.

The defense filed a variety of motions prior to trial:  a motion to disqualify the judge; a motion to dismiss on grounds of double jeopardy; a motion to dismiss for violation of the 180-day rule; and a motion to suppress the audio/video recording at trial.  The motion to disqualify was granted, the motion to suppress was not heard because it was untimely, and the other two motions were denied.  (Reg. of Action, ECF No. 9-1, PageID.455-457.)  Following a one-day jury

---

[2] The trial transcript hereafter will be referenced as "T. Tr. at ___."

trial, and after less than 20 minutes of deliberation, Petitioner was convicted of the only charged

offense:  one count of CSC III.  (T. Tr., ECF No. 9-5, PageID.671-73.)  On November 12, 2014,

Petitioner was sentenced to a prison term of 12 to 22 ½ years.  (Sentencing Tr., ECF No. 9-6,

PageID.698.)

Petitioner appealed his conviction and sentence to both the Michigan Court of

Appeals and the Michigan Supreme Court, raising the same eight issues presented in his habeas

petition.  In an unpublished opinion issued on May 17, 2016, the court of appeals affirmed the

conviction, but remanded the case for resentencing, because Offense Variable (OV) 11 was

improperly scored.  (*See* Mich. Ct. App. Op., ECF No. 1-2, PageID.78-86.)  The Michigan

Supreme Court denied leave to appeal on January 5, 2017.  (Mich. Ord., ECF No. 1-2, PageID.77.)

Petitioner did not petition for a writ of certiorari to the United States Supreme

Court.  His one-year statute of limitations for filing a federal habeas action therefore began to run

on April 5, 2017.  Petitioner's habeas application therefore was timely filed on April 4, 2018.

II.    AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'"

and ensures that state court convictions are given effect to the extent possible under the law.  *Bell

v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a

person who is incarcerated pursuant to a state conviction cannot be granted with respect to any

claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision

that was based upon an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to

meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme

Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and

not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v.

Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   In determining whether federal law is clearly

established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135

S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not

include decisions of the Supreme Court announced after the last adjudication of the merits in state

court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the

legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court

precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642,

644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state

court applies a rule different from the governing law set forth in the Supreme Court's cases, or if

it  decides  a  case  differently  than  the  Supreme  Court  has  done  on  a  set  of  materially

indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy

this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*,

135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words,

"[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Grounds I & IV:  Speedy Trial

In his first ground for habeas relief, Petitioner contends that the trial court abused its discretion when it refused to dismiss the case on the grounds that the prosecutor failed to bring Petitioner to trial in a timely fashion under Michigan's statutory 180-day rule, Mich. Comp. Laws § 780.131, and the Speedy Trial Clause of the Sixth Amendment of the United States Constitution. In Ground IV, Petitioner similarly claims that the prosecution violated his federal constitutional right to a speedy trial when it failed to bring him to trial for 470 days after his arrest and nearly 10 years after police initially investigated him for his sexual relationship with TB.

The Michigan Court of Appeals addressed the claims, as follows:

Betlem argues that this case should be dismissed for violation of the statutory 180-day rule, MCL 780.131, and violation of his constitutional right to a speedy trial. Betlem preserved this claim of error by raising it before the trial court. *People v Dupree*, 486 Mich 693, 703; 788 NW2d 399 (2010). However, there is no indication that he asserted his right to a speedy trial in the trial court. Therefore, the speedy trial claim is unpreserved. *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). We review de novo a legal issue presented under the 180-day rule. *People v McLaughlin*, 258 Mich App 635, 643; 672 NW2d 860 (2003). We review an unpreserved speedy trial issue for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

6

## A. 180-DAY RULE

A prisoner must generally be brought to trial within 180 days after the Department of Corrections (the Department) "causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint." MCL 780.131(1); MCR 6.004(D)(1). The 180-day period starts on the day after the prosecutor receives written notice that a defendant is incarcerated in a state facility and is awaiting trial on pending charges. *People v Williams*, 475 Mich 245, 256-257 n 4; 716 NW2d 208 (2006). The prosecution is not required to commence trial within the 180-day period; rather, the prosecution must act in good faith to move the case forward and not engage in undue delay. *People v Lown*, 488 Mich 242, 246-247; 794 NW2d 9 (2011).

The court arraigned Betlem on the charge in this case on June 26, 2013. In January 2014, while this case was pending, the trial court tried him on the CSC charges regarding his daughter and found him guilty. Betlem contends that, after he was sentenced to prison in that case, which occurred on February 19, 2014, the prosecution had notice that he was in the Department's custody. He argues that the 180-day period can begin when the prosecution knows or should know that the defendant is in the Department's custody, or when the Department knows or should know that a charge is pending against a defendant in its custody.

Betlem relies on *People v Hill*, 402 Mich 272; 262 NW2d 641 (1978), overruled in part by *Williams*, in support of his argument. He acknowledges that *Williams* overruled *Hill* to the extent that *Hill* held that the 180-day period could begin when the Department knew or had reason to know that a charge was pending against an inmate, but maintains that *Hill* is still good law for the proposition that the 180-day period can begin when the prosecution knows or should know that a defendant against whom a charge is pending is in the Department's custody. However, although our Supreme Court overruled *Hill* because the Court in that case expanded the scope of the 180-day rule "by requiring the prosecutor to bring a defendant to trial within 180 days of the date that the Department of Corrections knew or had reason to know that a criminal charge was pending against the defendant." The "statutory trigger," it explained, "is notice to the prosecutor of the defendant's incarceration and a departmental request for final disposition of the pending charges." *Williams*, 475 Mich at 259. Thus, contrary to Betlem's assertion, the 180-day period does not begin when the prosecution knows or should know that a defendant against whom a charge is pending is in the Department's custody. Rather, as our Supreme Court clarified, the period begins only when the prosecution receives the requisite notice from the Department.

Betlem does not claim that the Department gave the prosecution the required notice. And, although there is a letter from the Department, which is dated

7

March 19, 2014, and purports to notify the prosecutor of Betlem's location and the pending charge, Betlem does not discuss this letter and the record does not clearly establish whether the letter was sent by certified mail as required under MCR 6.004(D)(1), or whether the prosecutor even received it.

Even assuming that this letter satisfied the notice requirements, there is no support in the record for the proposition that the prosecutor violated the 180-day rule. The trial court held a pretrial hearing on April 2014, and Betlem moved to dismiss the case for violation of the 180-day rule and on double jeopardy grounds in July 2014. Assuming the 180-day period commenced shortly after March 19, 2014, the 180-day period clearly would not have expired by either July 2014, which is when Betlem moved to dismiss, or by August 25, 2014, which is when the trial court issued its written opinion and order denying his motion. Furthermore, Betlem's trial took place on October 9, 2014. As noted, the prosecution was not required to commence trial within 180 days, but rather was required to act in good faith to move the case forward and not engage in undue delay. *Lown*, 488 Mich at 246-247. There is no evidence of undue delay and Betlem had his trial approximately 6-1/2 months after the March 19 letter was sent.

Therefore, there is no basis for granting relief under the 180-day rule.

## B. SPEEDY TRIAL

For similar reasons, Betlem cannot show that the delay in his trial violated his constitutional right to a speedy trial. See US Const, Am VI; Const 1963, art 1, §20. To determine whether a defendant has been denied a speedy trial, courts will examine the following factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant resulting from the delay. *Williams*, 475 Mich at 261-262. The period of delay begins when the defendant is arrested. *Id.* at 261.

Betlem was arrested in June 2013, and his trial took place in October 2014. Because his trial was less than 18 months after his arrest, Betlem has the burden of proving prejudice. *Williams*, 475 Mich at 262. Delays caused by court scheduling are attributable to the prosecutor, but should be given a neutral tint and minimal weight. *Id.* at 263. Betlem moved to dismiss the case based on the 180-day rule, but he did not separately assert his right to a speedy trial. This factor weighs against his claim that he was denied his right to a speedy trial. *People v Rosengren*, 159 Mich App 492, 508; 407 NW2d 391 (1987). Betlem also has not shown that he was prejudiced by the delay. The charge against him, CSC III, required the prosecutor to prove that he engaged in sexual penetration with a person between 13 and 16 years of age. MCL 750.520d(1)(a). Although he asserts that the length of the delay could have resulted in the loss of memory for witnesses, TB did not express any memory difficulties. Further, the prosecution presented evidence that Betlem fathered TB's child, who was conceived when TB was 15 years old, and

8

paternity testing confirmed that he was the child's father. This evidence was not dependent upon witnesses' memories.

Considering the relevant factors, there is no evidence that the prosecution engaged in dilatory tactics or that any delay in Betlem's trial prejudiced him. Betlem has not established plain error warranting relief.

(Mich. Ct. App. Op., ECF No. 1-2, PageID.79-81.)

### A.    180-Day Rule

To the extent that Petitioner argues that the court and the prosecutor violated his rights under state law, his claim is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). The court of appeals considered and rejected Petitioner's claim that the prosecutor violated the state-created 180-day rule. (Mich. Ct. App. Op., ECF No. 1-2, PageID.79-80.) The state court's determination is binding on this Court. *See Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (reiterating that "'a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'") (quoting *Bradshaw*, 546 U.S. at 76). Petitioner therefore is not entitled to habeas relief on his state-law claim.

**B.    Speedy Trial**

Petitioner claims that the delay in bringing him to trial violated his right to a speedy trial under the Sixth Amendment, by way of the Due Process Clause of the Fourteenth Amendment. The Michigan Court of Appeals held that Petitioner failed to raise his claim in the trial court, as required by state law.  As a consequence, the court considered the claim to be procedurally barred and reviewed it solely for plain error.

Respondent first contends that the Court should deny his claim based on the concurrent sentencing doctrine, as Petitioner is serving four other concurrent 30 to 60-year sentences arising out of a separate CSC-I case involving his 10-year-old daughter.  Alternatively, Respondent contends, Petitioner procedurally defaulted his claim.  Finally, Respondent contends that the issue is meritless.

The Court will deny Petitioner's claim because it is procedurally defaulted.  When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was

applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim.  *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The doctrine of procedural default is applicable where a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  The doctrine is applicable if "the last state court to review [the prisoner's] conviction 'clearly and expressly' relied on [the prisoner's] procedural default in its decision affirming Petitioner's conviction."  *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

To determine whether Petitioner has been denied relief based on a procedural default, we look to the last "reasoned judgment rejecting the [federal] claim."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  In *Wilson v. Sellers*, 138 S. Ct. 1188 (2018), the Supreme Court reaffirmed that, in reviewing the basis for a summary appellate order of affirmance, the habeas

court should apply the doctrine of *Ylst*, 501 U.S. 797, and "look through" the unexplained order to the last reasoned decision of the state court.  138 S. Ct. at 1193-94.  Because the Michigan Supreme Court issued a one-sentence, unexplained order, this Court looks through that form order to the last reasoned decision:  the opinion of the Michigan Court of Appeals.

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default.  *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Although there may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question," *see Lee v. Kemna*, 534 U.S. 362, 376 (2002), this case does not fall within that "limited category."  *Id.*

The Michigan Court of Appeals expressly relied on Michigan's contemporaneous objection rule in denying Petitioner's claim.  It is clear that the contemporaneous objection rule was well-established at the time of Petitioner's trial.  *See, e.g.*, *People v. Carines*, 597 N.W.2d 130, 139 (Mich. 1999); *People v. Stanaway*, 521 N.W.2d 557, 579 (Mich. 1994) (citing cases); *People v. Kelly*, 378 N.W.2d 365, 369-70 (Mich. 1985).  A rule designed to arm trial judges with the information needed to rule reliably "serves a governmental interest of undoubted legitimacy." *Lee*, 534 U.S. at 385.  Petitioner's failure to comply with the state's independent and adequate state procedural rule, *i.e.*, making a contemporaneous objection, caused him to default his claims in state court.  *See Wainwright v. Sykes*, 433 U.S. 72, 86-88 (1977); *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011); *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010); *Lancaster*, 324 F.3d at 437; *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

Moreover, the fact that the court of appeals conducted a limited review of the claim under the plain-error standard does not alter the result.  In this circuit, "plain error review does not

12

constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Fleming v. Metrish*, 556 F.3d 520, 530 (6th Cir. 2009); *Keith v. Mitchell*, 455 F.3d 662, 673-74 (6th Cir. 2006); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989). Accordingly, review by this court is barred unless Petitioner can show cause and actual prejudice, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray*, 477 U.S. 485, or a miscarriage of justice under the actual-innocence standard of *Schlup*, 513 U.S. at 327.

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Factors that may establish cause include interference by officials, attorney error rising to the level of ineffective assistance of counsel, and a showing that the factual or legal basis for a claim was not reasonably available. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (citing *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991) (quotations omitted))).

Petitioner utterly fails to demonstrate cause for his failure to timely raise his constitutional speedy-trial claim. Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Moreover, Petitioner has not demonstrated that manifest injustice would result because he has neither alleged nor shown a colorable claim of actual innocence. *Schlup*, 513 U.S. at 322 (citing *Murray*, 477 U.S. at 495).

For these reasons, Petitioner's speedy-trial claims in Grounds I and IV are procedurally defaulted, and this Court is barred from granting habeas relief.

IV.    Ground II:  Statute of Limitations

Petitioner argues that he was denied due process because the state had no jurisdiction to issue an arrest warrant on an offense beyond the 10-year statute of limitations.  He also argues that his trial attorney rendered ineffective assistance of counsel by not raising the issue in the trial court.

The Michigan Court of Appeals rejected Petitioner's claim as follows:

Betlem also argues that his prosecution was barred by the applicable statute of limitations, and that his lawyer was ineffective for failing to assert that ground for dismissal.  We review de novo whether a prosecution is time-barred.  *Nutt*, 469 Mich at 573. Because this issue is unpreserved, however, review is limited to plain error.  *Carines*, 460 Mich at 763-764.

The prosecutor must bring a charge of CSC III within 10 years of the offense. MCL 767.24(3).  The Information filed in the trial court lists the date of the offense as January 1, 2003, to September 15, 2005.  The evidence presented in support showed that Betlem impregnated TB at some point in 2005, when TB was 15 years old.  Betlem was arrested and charged in June 2013, within the 10-year period set out in MCL 767.24(3)(a).  Therefore, the charge was not time-barred and Betlem's lawyer was not ineffective for failing to raise this issue.

(Mich. Ct. App. Op., ECF No. 9-7, PageID.696.)

As the Court previously discussed, claims that the state courts violated a petitioner's rights under state law are not cognizable on habeas review.  *See* 28 U.S.C. § 2254(a) (permitting habeas relief solely on the ground that a petitioner is held in violation of federal law); *Wilson*, 562 U.S. at 5; *Estelle*, 502 U.S. at 67-68; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41; *Blackledge*, 431 U.S. at 75 n.7.  The state court's determination that Petitioner was charged within the applicable statute of limitations is binding on this Court.  *See Stumpf*, 722 F.3d at 746 n.6 (reiterating that "'a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'") (quoting

14

*Bradshaw*, 546 U.S. at 76).  Because the statute of limitations for Petitioner's crime is a matter of state law, the Court lacks authority to review the determination of the Michigan Court of Appeals.

V.    Ground III:  Lack of Probable Cause to Arrest

In his third ground for relief, Petitioner alleges that his arrest was invalid under the Fourth Amendment, because the arresting officers lacked probable cause.  Petitioner claims that the only evidence supporting his arrest—the hospital records—were not obtained following either a warrant or permission from TB or her parents.  He also argues that his trial attorney was ineffective in failing to raise the issue in the trial court.

Petitioner's contention that his arrest was illegal does not provide any basis for habeas corpus relief.  *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction).  The method by which petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction.  *See Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.");  *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinois*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at *1 (6th Cir. Feb. 1, 1990) ("[P]etitioner's arguments that his arrest was absent probable cause . . . [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction.") (*citing United States v. Crews*, 445 U.S. 463, 474 (1980)).  Accordingly, Petitioner's freestanding claim of illegal arrest does not entitle him to habeas relief.

Although Petitioner's claim concerning his allegedly unconstitutional arrest is itself not cognizable on habeas review, his claim that counsel was ineffective in failing to raise the issue

15

in the trial court requires this Court to look at the merits of the Fourth Amendment claim.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (holding that a petitioner who charges his attorneys with ineffective assistance of counsel based on their failure to pursue a Fourth Amendment claim, must show first that the underlying Fourth Amendment claim had merit).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV. The "ultimate touchstone" in this area of law is "reasonableness."  *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (citation omitted).  "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  The existence of probable cause depends on reasonable conclusions drawn from the facts known to an arresting officer at the time of the arrest.  *United States v. Pearce*, 531 F.3d 374, 380-81 (6th Cir. 2008) (quoting *Devenpeck*, 543 U.S. at 152).  "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed."  *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)); *see also Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) ("Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed.'") (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

The Michigan Court of Appeals soundly rejected Petitioner's Fourth Amendment claim:

"Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). Betlem was arrested in June 2013, after TB decided to cooperate with the police investigation. A DNA test conducted early in 2006 showed that he was the father of the child, who was conceived when TB was 15 years old. The results of this test served as probable cause that Betlem engaged in sexual penetration with TB when she was 15 years old. Although Betlem contends that his arrest was the product of an illegal search, nothing in the record indicates that the officers conducted the DNA test as part of an unauthorized search. Thus, the record does not support his argument that his arrest was illegal, and his lawyer was not ineffective for failing to raise this issue.

(Mich. Ct. App. Op., ECF No. 9-7, PageID.696.) Although the court of appeals did not cite federal law, the Michigan Supreme Court case on which it relied, *People v. Champion*, 549 N.W.2d 849 (Mich. 1996), drew its standard directly from *Brinegar*, 388 U.S. at 175. The court of appeals therefore applied the correct constitutional standard.

Moreover, the state court's application of the standard to the facts was entirely reasonable. TB's cooperation with the police investigation and her own evidence concerning Petitioner's paternity, the results of the 2006 DNA test, and the birth record for TB's child all provided ample probable cause for the police to believe that Petitioner engaged in sexual penetration with TB when she was 15 years old.

As the state court also found, Petitioner failed to present any evidence, either in the state court or in this Court, supporting his suggestion that police officers obtained evidence of the DNA test through an unlawful search. Indeed, in the attachments to his habeas application, Petitioner includes a copy of the search warrant authorizing the taking of his DNA. (*See* 2/14/06 Aff. & Search Warrant, ECF No. 1-3, PageID.297-300.) Under these circumstances, Petitioner fails to support his assertion that the officers improperly obtained any of the evidence. As a consequence, Petitioner fails to demonstrate that the court of appeals' unreasonably rejected his illegal-search claim.

17

Finally, as the court of appeals recognized, because Petitioner's illegal-arrest and illegal-search claims are meritless, Petitioner cannot show that his attorney was ineffective for failing to object in the trial court, since any objection would have been futile. An attorney's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

For all these reasons, Petitioner is not entitled to relief on his third habeas ground.

VI.    Grounds V & VI:  Ineffective Assistance of Counsel

Petitioner contends that trial counsel was ineffective in a variety of ways. In Ground V, Petitioner suggests that counsel failed to adequately investigate the trial strategy on which defense counsel relied. Specifically, he argues, counsel's strategy was to rely on the testimony of TB's mother, to the effect that the parents knew about Petitioner's relationship with their 15-year-old daughter and were fine with it. When the trial court ruled that the mother's evidence was irrelevant to the elements of the offense, trial counsel had no other strategy and did not request a continuance to develop one. Also in Ground V, Petitioner argues that counsel was ineffective when she failed to move to suppress Petitioner's recorded statements that acknowledged that TB's child, who was conceived while TB was 15, was Petitioner's son. In Ground VI, Petitioner asserts that trial counsel was ineffective in failing to move to suppress the results of the 2006 DNA testing, because the DNA itself had since been destroyed.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's

performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.    A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals addressed Petitioner's claims of ineffective assistance of counsel, as follows:

Betlem argues that he did not receive the effective assistance of counsel. Our review of this claim is limited to errors apparent on the record. *Heft*, 299 Mich App at 80.  To establish ineffective assistance of counsel, he must show both that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that but for counsel's error, the result of the proceedings would have been different. *Carbin*, 463 Mich at 599.

Betlem argues that his trial lawyer failed to investigate the case and should have presented evidence that TB's parents did not object to TB's sexual relationship with him. The failure to investigate may amount to ineffective assistance if the failure deprived the defendant of evidence that might have made a difference in the outcome of the trial. *People v Marshall*, 298 Mich App 607, 612; 830 NW2d 414 (2012), vacated not in relevant part 493 Mich 1020 (2013).

A person who is at least 13 years old but younger than 16 years old cannot consent to sexual penetration. *People v Starks*, 473 Mich 227, 235; 701 NW2d 136 (2005).  Because TB's parent's approval of Betlem's sexual relationship with TB would not be a legally viable defense to the charged conduct, the failure to present evidence in support of that theory could not have altered the outcome of Betlem's trial.  In addition, the record shows that Betlem's lawyer tried to present evidence on this issue, but was prevented by the trial court.  The trial court did not allow the questions because consent is not a defense to the charge of CSC III.  Betlem's trial lawyer cannot be faulted for failing to present evidence that the trial court precluded.

Betlem also argues that his lawyer should have moved to suppress the DNA results.  He suggests that his lawyer might have moved to suppress on the ground that the evidence was obtained as a result of an illegal search and seizure, but he does not actually argue as much and does not otherwise identify a ground for suppressing the DNA evidence.[3]  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims." *Green Oak Twp v Munzel*, 255 Mich App 235, 244; 661 NW2d 243 (2003).  Moreover, Betlem has the burden of establishing the factual predicate of his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).  Betlem states that the record supports his claim, but he does not explain how, or support this allegation with specific references to the record.  Accordingly, Betlem has not overcome the presumption that counsel rendered effective assistance. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

[3] Nothing in the record indicates that the samples were obtained by any means other than consent.

(Mich. Ct. App. Op., ECF No. 9-7, PageID.695.)  Although the court of appeals did not cite federal case law, the standard it applied is identical to the *Strickland* standard, and the case on which the court relied, *People v. Carbin*, 623 N.W.2d 884 (Mich. 2001), expressly applied *Strickland*.  *Id.* at 899.

### A.  Trial Strategy

Petitioner's present argument concerning counsel's trial strategy does not correspond to the issue addressed by the court of appeals.  A careful review of the brief filed in both the Michigan Court of Appeals and the application for leave to appeal to the Michigan Supreme Court explains the discrepancy.  In his appeals to the state courts, Petitioner argued that counsel had been ineffective in failing to present the testimony of TB's mother, who would have testified that TB's parents knew about his relationship with TB and approved it.  (*See* Pet'r's Supp. Br. on Appeal to Mich. Ct. App., ECF No. 9-7, PageID.822; Pet'r's Appl. for Leave to Appeal to Mich. Sup. Ct., ECF No. 9-8, PageID.928-929.)  In his habeas action, in contrast, Petitioner has inserted a few sentences into his argument, which completely change the nature of the claim being raised.  Petitioner now asserts that counsel was ineffective in relying on the expectation of being able to admit the testimony of TB's mother and failing to seek a continuance when the court refused to allow evidence about parental consent, because it was irrelevant to the elements of the offense and would merely encourage jury nullification.

Petitioner's current claim is unexhausted, notwithstanding Petitioner's declaration in his petition that he raised the claim to both the Michigan Court of Appeals and the Michigan Supreme Court.  Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so

that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.  Because Petitioner's claim concerning his attorney's trial strategy is unexhausted, the Court may not grant Petitioner relief on his claim.  The Court, however, may deny habeas relief on his unexhausted claim.  28 U.S.C. § 2254(b)(2).

Petitioner argues that counsel should have known that she would not be permitted to introduce evidence that the victim's parents were aware of and approved his involvement with their 15-year-old daughter.  He argues that, by depending on the strategy without appreciating the likelihood that the evidence was inadmissible, counsel was left mid-trial with no other defense.  Petitioner argues that counsel should have moved for a continuance to identify another defense.

Petitioner utterly fails to overcome the strong presumption that counsel's performance was within the wide range of competent counsel.  *Strickland*, 466 U.S. at 689.  He fails to identify what possible alternative defense was open to defense counsel.  Indeed, defense counsel was confronted with evidence that a nearly full-term child was born only four months after the mother turned 16; that DNA evidence showed that Petitioner was the father of that child; that Petitioner admitted in a recorded interview with the police that he was the father; and that the

mother testified that Petitioner had been having sexual relations with her since she was 13, that he was the father of her child, and that Petitioner became concerned when she got pregnant about being prosecuted for having sexual relations with her.  Under these circumstances, few reasonable defense options were open to counsel beyond attempting to gain the jury's sympathy with evidence of parental consent—however irrelevant such evidence was to the crime in issue, given that consent was not a defense.  Defense counsel attempted to have the evidence admitted, but she was unsuccessful.  Nevertheless, defense counsel successfully pursued and argued an additional defense, though that defense likely also was irrelevant.  Counsel obtained the victim's admission that she had married Petitioner and had five children with him, only bringing charges against him when she filed for divorce after 10 years of marriage.  (T. Tr. at 95-96, 130-31, ECF No. 9-5, PageID.624-625, 659-660.)

Under these circumstances, Petitioner fails to meet his burden of establishing the performance prong of *Strickland*.  Further, given the extensive evidence of Petitioner's guilt, Petitioner also cannot show that any error by counsel had an effect on the judgment.  *Strickland*, 466 U.S. at 691.  Petitioner therefore fails to demonstrate either prong of the *Strickland* standard.  Even more certainly, given the double deference owed to the state court's determination of Petitioner's ineffective-assistance claim, Petitioner falls short of demonstrating entitlement to relief on habeas review.

### B.  Failure to Timely Move to Suppress Statement

Petitioner argues that his trial attorney rendered ineffective assistance by failing to file a timely motion to suppress a portion of a CD, in which Petitioner admitted having fathered TB's child in 2006.  It is true that, according to the trial court docket sheet and letters from defense counsel to Petitioner, trial counsel filed a motion to suppress that was not heard by the trial court,

due to the lateness in filing.  (ECF No. 1-1, PageID.68, 71.)  Nevertheless, Petitioner utterly fails to demonstrate that the failure to file a timely motion amounted to performance that fell below an objective standard of reasonableness.

During Petitioner's first police interview related to the CSC-I case involving his daughter, Petitioner made brief admissions acknowledging that the DNA evidence showed that he was the father of TB's son, who was conceived when TB was 15 years old.  Only the one-sentence excerpt showing that limited admission was introduced at trial:

> THE DEFENDANT:  The one with my wife, we all know I did.  I have a son obviously, you were the one that took the DNA.

(T. Tr. at 106, ECF No. 9-5, PageID.635.)

As a party admission against interest, Petitioner's statement to the police was admissible.  Mich. R. Evid. 801(d)(2).  Any motion to suppress such a statement would have been denied.  As a result, the failure to move to suppress Petitioner's statement would have been futile.  Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.[3]  *See Smith*, 591 F.3d at 523; *O'Hara*, 499 F.3d at 506; *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2001).  Moreover, in light of the overwhelming evidence of that Petitioner had impregnated the victim when she was 15 years old, the admission of the limited admission could not have resulted in prejudice sufficient to meet the second prong of *Strickland*.

For all of these reasons, Petitioner fails to demonstrate that counsel rendered ineffective assistance of counsel in failing to file a timely motion to suppress.

---

[3] Defense counsel's motion to suppress addressed several issues.  Counsel sought to dismiss the admitted statement because it was obtained during an interrogation about the CSC-I case involving Petitioner's daughter.  (*See* Request for In Camera Review of Audio/Visual CD and Mot. to Suppress Audio/Visual CD at Trial, ECF No. 1-1, PageID.69-70.)  Counsel also argued that the statement was more prejudicial than probative.  In addition, counsel sought to suppress certain other portions of the interrogation that were not ultimately admitted at trial.  (*Id.*)  Since none of the other statements was admitted, the Court need not address any potential prejudicial impact of such statements.

### C.  Failure to Suppress DNA Evidence

Petitioner argues that counsel was ineffective when she failed to file a motion to suppress the DNA evidence obtained in 2006, shortly after TB gave birth to her son at the age of 16 years and 4 months.  Petitioner argues that the 2006 DNA sample had since been destroyed, so it was impermissible to admit the results of the DNA testing.  He also argues that the evidence was obtained as the result of an illegal search or seizure.

The Michigan Court of Appeals held that Petitioner utterly failed to support his claim that the DNA evidence was unlawfully obtained.  That conclusion is patently true, as Petitioner utterly fails to indicate the basis for his claim of illegal search or seizure.  Indeed, as an attachment to his petition, Petitioner includes a copy of the affidavit and search warrant authorizing the taking of his DNA sample.  (*See* 2/14/06 Aff. & Search Warrant, ECF No. 1-3, PageID.297-300.)  Petitioner makes no attempt to challenge the validity of the warrant.  Thus, it patently appears that Petitioner's DNA sample was legally obtained.  As a result, it is even more clear that Petitioner's unsupported argument that the DNA evidence should have been suppressed utterly fails to overcome the strong presumption that counsel acted reasonably in not moving to suppress the DNA evidence.

Further, the destruction of Petitioner's DNA sample did not violate the Due Process Clause.  While the destruction of evidence that is favorable to the accused violates due process irrespective of the good faith of the prosecution, *see Brady v. Maryland*, 373 U.S. 83, 87 (1963), the mere destruction of evidence that is potentially relevant violates due process only if that evidence was destroyed in bad faith, *see Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).  Petitioner does not argue or demonstrate that the destroyed DNA was exculpatory or that the evidence was destroyed in bad faith.  Consequently, any motion to suppress would have been

25

futile, and counsel was not ineffective in failing to file a futile motion.  *See Smith*, 591 F.3d at 523; *O'Hara*, 499 F.3d at 506; *Harris*, 204 F.3d at 683.

Finally, counsel undoubtedly was aware that filing a motion to suppress on this ground would have been futile for another reason.  Had the court suppressed the report from the 2006 sample, the prosecution clearly had probable cause to obtain a new sample from Petitioner and to run new DNA tests.  Petitioner admitted that the child born to TB in January 2006 was his son, and simple biology demonstrated that a near full-term child born to a 16-years-and-4-months-old mother was conceived when the mother was 15 years old.

For all these reasons, Petitioner fails to demonstrate that counsel was ineffective for failing to move to suppress the DNA, much less to overcome the double deference owed to the state court's rejection of his claim.

VII.    Ground VII:  Prosecutor's Failure to Timely File Witness List

Petitioner argues that, because the prosecutor filed his witness list and exhibit list only nine days before trial, defense counsel was deprived of adequate time to properly investigate, so as to be able to effectively impeach witnesses and obtain rebuttal witnesses.  He also argues that the prosecutor deprived him of access to discovery material confiscated by the police (pictures, text call-logs, and Petitioner's computer), which purportedly prevented him from effectively cross-examining the witnesses.

The Michigan Court of Appeals held that Petitioner had not raised the issues in the trial court and therefore only reviewed the claims for plain error:

Betlem did not raise a discovery violation in the trial court, or object to the filing of the prosecution's witness or exhibit lists. Therefore, review of these issues is limited to plain error.  *Carines*, 460 Mich at 763-764.

Although Betlem refers generally to the prosecution's duty to disclose any known exculpatory information or evidence, as well as other types of information

upon request, see MCR 6.201(B) and *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), he does not identify any evidence that was withheld or suppressed. Instead, he complains that the prosecution did not timely file its witness or exhibit lists.

The prosecution must provide the defendant or defense counsel with a list of witnesses to be called at trial no later than 30 days before trial. MCL 767.40a(3). The prosecution's witness list is dated September 30, 2014. Betlem's trial took place on October 9, 2014. But even if Betlem could demonstrate plain error because the witness list was not timely filed, he still has the burden of demonstrating that this error affected his substantial rights. *Carines*, 460 Mich at 763. Betlem did not request any adjournment of trial or other relief on the ground that the witness list was untimely filed, or allege that the late filing hindered his trial preparation. Further, he does not explain on appeal how the tardy filing prevented him from effectively crossexamining each witness called by the prosecution. Accordingly, Betlem has not met his burden of establishing that the late filing affected his substantial rights.

(Mich. Ct. App. Op., ECF No. 9-7, PageID.697.)[4]

To the extent that Petitioner complains that the witness and exhibit lists were untimely under Michigan law, Mich. Comp. Laws § 767.40a(3), he fails to raise a claim cognizable on habeas review. As previously discussed, a federal court may only issue a writ of habeas corpus if the prisoner is in custody in violation of the federal constitution, laws, or treaties. *Wilson*, 562 U.S. at 5 (quoting 28 U.S.C. § 2254(a)); *Blackledge*, 431 U.S. at 75 n.7. The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67-68. Moreover, "'a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf*, 722 F.3d at 746 n.6 (quoting *Bradshaw*, 546 U.S. at 76); *see also Thomas*, 898 F.3d at 700 n.1 (same). The Michigan Court of Appeals found that Petitioner

---

[4] Based on the court of appeals' decision, Petitioner's seventh habeas ground appears to be procedurally defaulted, because he failed to object in the trial court. However, federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Because Petitioner's claim plainly lacks merit, the Court will skip the procedural-default analysis.

was not entitled to relief under Mich. Comp. Laws § 767.40(a)(3); Petitioner therefore is not entitled to habeas relief.

To the extent that Petitioner argues that the late notice of witnesses and exhibits interfered with his ability to cross-examine the witnesses, his claim is meritless for multiple reasons.

First, Petitioner's claim is factually frivolous. The documents that he alleges were belatedly produced—the laptop computer, crime-scene photographs, arrest photographs, cell-phone pictures and text logs—were entirely irrelevant to the instant case. All of the identified items related to Petitioner's convictions on the four CSC-I charges involed his daughter. None of those items was introduced in the CSC-III trial involving TB, which is in issue here. (*See* T. Tr. at 2 (listing exhibits), ECF No. 9-5, PageID.531.) Moreover, Petitioner had already been tried and convicted on the CSC-I charges prior to his trial in the instant case. However late those items may have been delivered in the CSC-I case, Petitioner had them well before his trial in this case.

In addition, Petitioner failed to allege or demonstrate in the state court or this court why any of the witnesses that were disclosed came as a surprise to him. All but two of the listed witnesses were the officers of the Chippewa County Sheriff's Department who were involved in the case; the Michigan State Police Forensic Laboratory personnel who were involved in the DNA processing and analysis; and the personnel from War Memorial Hospital who assisted TB while she was in the hospital during the days following the birth, all of whom were named in the search-warrant affidavit. (*See* People's Witness List, ECF No. 1-1, PageID.51-52.) Moreover, only three witnesses testified at trial: the victim, the officer in charge of the investigation, and the doctor who delivered TB's son, who testified as to the gestational age of the infant at the time of birth. All three witnesses were subjected to cross-examination. As a consequence, no evidence suggests that

Petitioner and his attorney lacked knowledge about the witnesses for which the defense needed to prepare.

Second, Petitioner's claim is legally unsound.  The Supreme Court has never held that a defendant in a criminal case must be provided discovery of all possible evidence against him.  While the prosecution has the duty under the Due Process Clause to disclose evidence favorable to the defendant upon request," *Brady*, 373 U.S. at 87, due process does not require "that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  The Court repeatedly has held that there is no general constitutional right to discovery in a criminal case.  *Id.* (citing *Wardius v. Oregon*, 412 U.S. 470, 474 (1973)); *see also Gray v. Netherland*, 518 U.S. 152, 168 (1996).  Because Petitioner had no constitutional right to discovery of the witnesses against him, he cannot state a constitutional claim arising out of his receipt of the prosecution's witness list nine days before trial.

For all these reasons, the state court's rejection of his claim was neither contrary to nor an unreasonable application of established Supreme Court precedent.

VIII.    Ground VIII:  Judicial Bias

In his final ground for habeas relief, Petitioner argues that he is entitled to habeas relief because the trial judge engaged in judicial partiality toward the prosecution.  Petitioner specifically complains that the trial court ruled against him on his claim that the case was barred by the statute of limitations.  Petitioner suggests that the trial court's determination was the result of bias, because the prosecutor at some point informed the trial judge that he could not dismiss and refile the case without running into problems with the statute of limitations.

The Michigan Court of Appeals rejected Petitioners' claim, as follows:

29

Betlem argues that he was denied due process because the trial court was biased in favor of the prosecution. A defendant in a criminal proceeding has the right to have a neutral and detached magistrate. *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). "[A] trial judge is presumed to be impartial, and the party asserting partiality has the heavy burden of overcoming that presumption." *People v Wade*, 283 Mich App 462, 470; 771 NW2d 447 (2009). Betlem's claim of judicial bias is premised on his position that the trial court expressed agreement with the prosecution's position that if it elected to dismiss Betlem's case, the statute of limitations could preclude later reinstatement of the charge. The record does not disclose that the trial court ever made a formal ruling on the statute of limitations issue. However, even if the trial court had made a ruling that was not favorable to Betlem[] or expressed agreement with the prosecution's legal position regarding a potential statute of limitations problem if the case was dismissed, there is no basis for inferring that the court was biased against Betlem. See *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). Betlem has not met his burden of overcoming the presumption that the trial court acted impartially. *Wade*, 283 Mich App at 470.

(Mich. Ct. App. Op., ECF No. 9-7, PageID.697-698.)

The Due Process Clause of the Fourteenth Amendment entitles a criminal defendant to a "'fair trial in a fair tribunal before a judge with no actual bias against the defendant.'" *Lyell v. Renico*, 470 F.3d 1177, 1186 (6th Cir. 2006) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997), *overruled in other part by Harrington v. Richter*, 562 U.S. 86, 99 (2011). In *Liteky v. United States*, 510 U.S. 540 (1994), the Supreme Court addressed the statutory recusal standard for federal judges under 28 U.S.C. § 455, but the Sixth Circuit has relied on that standard for evaluating judicial-bias claims under the Due Process Clause. *Lyell*, 470 F.3d at 1186 (citing *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002)).

Under *Liteky*, "a judge's misconduct at trial may be 'characterized as bias or prejudice' only if 'it is so extreme as to display clear inability to render fair judgment,' *Liteky*, 510 U.S. at 551 (internal quotation marks omitted), so extreme in other words that it 'display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Lyell*, 470 F.3d at 1186 (quoting *Liteky*, 510 U.S. at 555). Disapproving judicial remarks and expressions of impatience ordinarily do not support a bias or partiality challenge; "'they will do so if they reveal

30

such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Id.* at 1187 (quoting *Liteky*, 510 U.S. at 555-56); *see also In re Murchison*, 349 U.S. at 136; *Offutt v. United States*, 348 U.S. 11, 17 (1954).  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  *Liteky*, 510 U.S. at 555.

Petitioner fails to demonstrate judicial bias.  As the Michigan Court of Appeals held, Petitioner never asked the trial court to rule on the statute-of-limitations question.  The trial court therefore did not and could not have demonstrated bias in deciding that question against Petitioner.  Moreover, as earlier discussed, the Michigan Court of Appeals held that the prosecution was timely under the statute of limitations.  Thus, even if the trial court is assumed to have ruled on the question, the court of appeals found that ruling legally correct.  Petitioner cannot demonstrate bias in a judge's correct application of the law.

Finally, Petitioner points to no instance of judicial antagonism during the trial.  He therefore necessarily falls far short of identifying "'such a high degree of favoritism or antagonism as to make fair judgment impossible.'"  *Lyell*, 470 F.3d at 1187 (quoting *Liteky*, 510 U.S. at 555-56).

Petitioner therefore is not entitled to habeas relief on Ground VIII of his petition.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is

warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

### **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated: June 21, 2019                                          /s/ Ellen S. Carmody_____
                                                                         ELLEN S. CARMODY
                                                                         U.S. Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).